So we'll hear Larson first, then we'll go to the soccer case, and then we'll conclude with Doe v. J.P. Morgan. So, Larson. Good morning, and may it please the court. My name is Reed Hollander, counsel for plaintiff appellant John Larson. With me is co-counsel Megan Brackney, and Mr. Larson is here as well. Your Honors, in the tax context, procedural due process requires that there be an adequate opportunity afforded for a post-deprivation judicial review of the legal rights of the plaintiff. And that's from Phillips v. Commissioner at both 595 and 597. When the government issues an assessable penalty, the U.S. Tax Court does not have jurisdiction to hear a challenge to that penalty. The only court that can hear a challenge to an assessable penalty, such as the one in this case, is the U.S. District Court. The target of that penalty can't challenge it by a declaratory judgment action. It can't seek to enjoin it. The only mechanisms for review of that assessable penalty are a refund action under 1346 or an action under the Administrative Procedure Act, both of which are claims we've raised in the court below. There's a certain resonance with what you say, and, you know, I can't speak for my colleagues, but if we were fashioning a regime with a clean slate, I mean, suffice it to say, we might impose different procedures, but, you know, the floral opinions are clear, and they are there. What would you have us do in the face of, you know, precedents that the country and the U.S. District Court have had for generations? Certainly, Your Honor. The Flora case did not reach the question presented here. What was at issue in the court in Flora was whether a tax that could have been brought, a challenge to which could have been brought to the tax court because a deficiency notice had been issued, which gave the tax court jurisdiction, whether that challenge should instead be brought in district court by means of a partial payment and suit for refund. They didn't reach the question presented here. And you see that when you look at the dissent in Lange, which discusses this exact scenario. Now, there it's under a jeopardy assessment question, but the dissent in Lange talks about the fact that where you don't have the ability to go to tax court, you can't apply the Flora full payment rule, and it's consistent with what the Second Circuit footnote 6 in Irving v. Gray said as well, that you can't apply that full payment rule. If we agree with you, I mean, what is the mechanism? I mean, are we saying that Flora is distinguishable and then we can write on a clean slate? I think this Court could say, first of all, that Flora didn't reach the question presented here. The full payment rule in Flora was confined to the class of cases, which is the vast majority of cases, of course, that can be litigated in tax court. This narrow range of cases that present assessable penalties that cannot go to tax court is a different set of cases. And Flora doesn't apply to them, and therefore, it's not in contravention of Flora. Roberts. That was the given. But, I mean, do we go back to the statute and interpret the words of the statute and you would argue we should come to the conclusion that it doesn't apply, that the full payment rule doesn't apply here because of the wording of the statute, or what? I think it's a combination of two things, Judge Shin. It's the words of the statute which say that a taxpayer may challenge any penalty collected, not assessed, but collected without authority. But it says tax assessed or collected. That's exactly right. Penalty collected. But not. The statute draws a clear distinction between assessment of taxes, which has an alternate remedy in the tax court without payment, or collected. Whereas with penalty, it says collected. So the statute seems to be cognizant of the fact that the penalty has to be paid. That's right, Your Honor. The penalty has to be paid. And, in fact, all of the penalty that has been paid by Mr. Larson, which is $1.4 million toward the penalty, is what he's seeking to recover. What do you make of the fact that Congress did provide that, in certain instances, one can prepay a portion of a penalty and then seek its refund, but didn't do so with regard to this particular penalty? If Congress saw, I mean, if we're, let's stick to the statutory side and then we'll go to the constitutional side, if you will. Certainly. At least from my perspective. If Congress identifies a certain set of penalties that can be partially paid, and that then the taxpayer can go and seek their recovery, doesn't it implicitly then indicate that Congress, with regard to this penalty, didn't make that remedy available? Congress did not make that remedy available in this penalty. But you and I would agree that it did make it available in other penalties. It did. And it's not clear why they did it for others and not this one. This one was only in existence for four years, between 1997 and 2000, and then it was later amended. The assessments that are — Paid for four years for your client. Yeah. Certainly, Your Honor. But I think the — If Congress didn't anticipate the enormous penalty that arose in this case, in the application, which, of course, we challenged on the merits in the court below, that there's been a gross over-penalization in the application of that statute, perhaps they didn't anticipate that you could have the scenario you have here, which is a $160 million penalty and the government taking the position — It requires us to read Congress's mind, which is really an extraordinary task. Certainly. But you — Presupposes that Congress has one. But let me ask you this, and you pin a lot on what Justice Blackmun said in Lange about your due process, or your idea that there might be a constitutional violation here. What do you make of Judge Blackmun's statement in Lange, quote, It has long been established, Moreover, there is no constitutional requirement for prepayment form to adjudicate a dispute over the collection of tax. Right. And we're not seeking prepayment review. Our client has paid. I agree fully with that statement. The case law is clear that you — Well, he's paid $1 million. I mean, only a million out of the 60 that he owes. But there's nothing in that statement about the unavailability of prepayment review that says if you have paid something, you still don't get review. Except that you have the situation where Congress made that provision for other penalties, but didn't for this. And why they did it for some and not for others is unclear. But the barrier that's created here is basically to tell a party, The government can assess a penalty against you of an unknown quantity, and until you pay it in full, there is no judicial review anywhere. There is no court that is open to you. And if, as in this case, the payment of that penalty is impossible, Mr. Larson, we've alleged, does not have $60 million. The due process rule is, is that when I can't pay, so we'll have, like, affidavits like we do for a signed counsel showing a certain level of financial ability and — I don't think, actually, you need — I'm trying to understand the standard. Right. I don't think the Court has to go there, because I think this Court could determine that the full payment rule, which was a gloss on the text of 1346, which, by its text, doesn't say full payment — It says collected. It says collected. And all of the tax — all of the penalty in this case that was collected from him is being sought for refund. It's not all the penalty that was assessed. Isn't that really the divisibility argument that's been rejected by a number of courts? I don't believe — So you're saying, pay some of it, we challenge that amount, and then it's claim preclusion or collateral estoppel as to the rest of it? That seems to be what you're suggesting. We're not arguing divisibility, Your Honor. We're arguing that the text of 1346, when married with the due process clause, requires that there must be a forum open to our client for judicial review, and that if the gloss of flora is placed over it and says, you must first pay in full whatever the government tells you to pay before any merits review is available to you, you run headlong into a procedural due process violation under Phillips v. Commissioner. Why did your client come to the number 1.4? It was a — at the time that that payment was made, it was computed based on certain of the underlying factors and, I'm sure, his ability to pay at that time. All right. Thank you, Your Honor. Let me have some time for him. Thank you. Good morning, and may it please the Court. My name is Andrew Krauss from the U.S. Attorney's Office in the Southern District of New York for the United States. Mr. Larson has not fully paid the penalties he seeks to challenge, and full payment of those penalties is a threshold requirement for filing a tax refund action in district court. In the nearly 60 years since flora was decided, no court has created the type of exception that Mr. Larson seeks here, an exception. Now, a large part of the reasoning in flora was that there was the ability to go to tax court without paying. Correct? Well, Your Honor, the flora court really discussed a number of factors. You spent a fair amount of time saying how there was this ability to go to tax court without prepaying. There was discussion of that. We don't have that here. There's no prepayment review in tax court for Mr. Larson. That's — On that basis, isn't flora distinguishable? I don't think so, Your Honor, because a big part of the discussion of the tax court in flora is the history of the Board of Tax Appeals, the creation of that as a remedy for taxpayers. And part of the analysis, a big part of the analysis of the flora court is that was created based on the background understanding that the full payment rule, the pay first, litigate later principle — And it was to give a mechanism for a taxpayer to challenge without prepaying. Right? In those circumstances where Congress — And we don't have that here. That's true. And the tax court has always been a court of limited jurisdiction as set forth by Congress. Suppose the amount that he actually owed was $160,000, but the penalty assessed was $1.6 million. The government was convinced that that was the correct amount, but the government hypothetically made an error. What's the taxpayer to do in that circumstance? Well, as Mr. Larson did here, he pursued his remedies with the IRS Office of Appeals, which is an independent body within the IRS. No judicial remedy. Well, the judicial remedy would still be to file a tax refund suit once he makes full payment. After paying. After paying the whole thing. I mean, and if the government, if the IRS made a horrible mistake and made it, you know, $100 million and it should have been $1 million, the taxpayer would have to pay all of the erroneous penalty first. That's the government's position. Before you get a judge to look at it. Yeah. After going through the appeals process. If the appeals process did not. The answer is yes. Did not resolve it, then yes. He'd have to pay the $100 million before he could get a judge to look at the problem. That is the consequence of the full payment rule as set forth in the statute. But doesn't it give you problems? We certainly recognize, Your Honor, that Mr. Larson is in a difficult predicament as a result of these long-established precedents. It might be a lousy policy, but I don't know it's a constitutional defect. I mean, Flore gives full throat to the fact that the government has a longstanding interest in the payment of taxes and recognizes that. And it was part of the analysis with regard to the determination that Congress decided to give an alternative, but didn't seem to think that that was of a constitutional dimension. It appears at the very end of the decision. It says, but in any event, they have this. I mean, I know of no case that says that there's a due process violation because you have to pay up front. I mean, it may be egregious and it may be a lousy public policy, but I don't know that it's a constitutional flaw. I agree, Your Honor. And at least one court, the Sixth Circuit in Johnston, looked at the question of whether there was a due process issue as a result of a pre-payment remedy in tax court and who alleged that the costs were prohibitive for him to pursue a tax refund action in district court. Flore, too, seemed to indicate that what Congress was just doing, what Congress was doing was recognizing this strong policy about payment and that they've made an exception. Certainly, Your Honor. And that was for them to do. Right. And Flore 1 also makes the point that there may be situations where there will be a hardship as a result of the operation of the full payment rule, and if there are or, for example, someone makes a partial payment, then they can't go to tax court, right? That's correct. So if you paid $10 on the $100,000, you're stuck in tax court. You've got to come up with another $999,000 or whatever it is, $999.90, before you can seek relief, right? Well, if you make payment, right, the tax court is a pre-payment forum. That's correct. Nobody likes paying taxes. But, I mean, the government had the court recognized a strong government interest in that the taxpayer pay their obligation and then seek redress. That's correct, Your Honor. And, again, to the extent there was a hardship created by the full payment rule, the Flora court said that if there was a need to ameliorate that hardship, that was a matter for Congress. And, in fact, as Your Honor alluded to, that Congress has taken that step. But the Flora court also says the hardship argument ignores entirely the right of the taxpayer to appeal the deficiency to the tax court without paying a cent. Yes. Certainly in cases where the tax court review is available. The tax court review in pre-payment circumstances is available for a large majority of IRS assessments, but Congress has not seen fit to make tax court review available for assessment purposes. That language seems to suggest that there might have been a different result if there had been no ability to go to the tax court without paying a cent. Well, Your Honor, no court has ever interpreted Flora in that way. But that would be an interesting argument that the language in the statute changes because of another provision in the statute. Right. And the Flora analysis is based on the language of the statute and congressional intent in the decades since the statute was enacted. It traces the full payment rule back to the Cheatham case in 1875, looks at the evolution of the statute and all the steps that Congress had taken in the ensuing decades based on the background understanding that the full payment rule did, in fact, apply. The full payment rule is essentially a court-made rule, right? Even in Flora, the court says we think the language of the statute says this, but it's not clear. Well, I think the Flora court was conducting an analysis of the statute to determine what was intended by the statute. But, yes, the specific words full payment do not appear in the statute. But the Flora court goes to great pains to set out all the reasons why it believed and it determined that the full payment rule was understood by Congress at the time and the various successive amendments to the relevant jurisdictional statute was baked into that provision. Do you have an update as to how many that his exposure now? Is there a new number? I'm not aware of any additional payments that have reduced the total liability below the $61 million or so that's set forth in the papers. And has there been any adjudication of, was there or has there been a potential for adjudication of collateral matters with regard to individual taxpayers that may have participated in some of these investments, that the assessment of the losses of the loans with regard to the calculation would ultimately became the penalty as to whether they were appropriate in the context of the respective investments and or losses and gains? I'm not aware of any cases that have addressed that particular issue with respect to these tax shelters as they were structured. All right. And what's the life of the penalty? How long is Mr. Larson at risk? Is the penalty as long as he lives or does it have a time period to it? I'm not sure of the answer to that, but it would be a substantial length of time, Your Honor. I'd have to get back to you on that to confirm. It's the government's position that he would have to pay $61 million to be able to come to court? At present, yes. At present. At one point it was $160 million, but because of the other collections. Right, from jointly and separately liable co-promoters, which there theoretically could be additional collections towards that number in the future, but I'm not aware of any that are currently. And there's no due process concern because there's the ability to appeal administratively? Is that the argument? Well, the ability to appeal administratively and the availability of the mechanism of the tax refund suit. Okay. Thank you. We'll hear the rebuttal. Judge Wesley, the duration of the penalty here is initially a 10-year period for collection, which can then be reduced to a judgment, and then the judgment lasts as long as the underlying State law permits it, which I think in New York is another 20 years, and that can be further rolled and rolled. So it's essentially a lifetime penalty. And if it's not paid by the end of his life, it will become a debt of his estate. The position taken by the government allows the executive branch to control access to the judicial branch by setting a penalty in excess of a taxpayer's ability to pay. How do you respond to the argument that this has been the rule for generations and Congress has not chosen to fix it? Well, I think Congress wisely created the Board of Tax Appeals and then the U.S. Tax Court with an eye towards giving an access to judicial review. The assessable penalty regime has not been given the same treatment by Congress. Why it has elected not to include that in the tax court's jurisdiction, one doesn't know, but it may be because it didn't perceive it to be as large of a need or there may be other reasons, but that doesn't eliminate the due process problem. And I want to come back, Judge Wesley, to something you said about the government's interest in the payment and collection of taxes, which, of course, is critical and the courts talk about that. But this penalty doesn't arise from a tax. It's not a tax in and of itself. Well, that's true. It is not even computed as a percentage of tax or money even ever held by Mr. Larson. It is a penalty for failure to file the shelter registration form and its computation, the 1 percent computation, is based entirely on the IRS's unilateral calculation of the amounts invested by others. And so they don't have the same – there's not the same need to protect the public fisc in the tax regime as there is here under this penalty. Fair enough. On the due process claim, what's your best analogy? I mean, there's no – you didn't have any cases cited and the government doesn't cite any cases either where anybody's actually ruled on this particular issue. That's right. What's your best analogy for a due process claim where there's been some form of administrative review that's deemed inadequate because there's then a bar to getting into court because of a financial requirement? Do you have one? I don't know of any. That's why I'm asking. I'm not aware of one. It's a very unusual scenario. I mean, I don't know. I've seen a lot of takings cases in my days, both in state and federal court, but I've never seen a case that was premised on a financial, you know, like a bond or something like that requirement. And so I'm not aware of them. And I think the APA cases, there are narrow situations with respect to the IRS where the Administrative Procedure Act has been used in lieu of another mechanism for review where because of sort of the unusual sequence of events and the unusual fact pattern, there's not sort of the normal route to get in. Under the APA, is that a different inadequacy as opposed to Matthew's kind of balancing with regard to a due process claim? Would it be a lower bar, do you think? I think it could be a lower bar. I think the courts have indicated that the adequacy analysis under the APA is whether there is not the same as the constitutional test under Matthews. I have a recollection of the Pennzoil case. Wasn't there a similar issue where there was a posting of a bond? It's not a tax case that was so high that there were constitutional issues raised. I apologize, Your Honor. Vague recollection. It's in the vague background of my brain, but I'm not up on that case, so I can't speak to that. I'm sure you've looked.